# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

KALLY SAM,

    Plaintiff,

  vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

                           /

No. 2:13-CV-1983-CMK

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 14).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff received child's supplemental security payments due to the disabling effects of leukemia. Plaintiff turned 18 on March 1, 2007, and his eligibility for disability benefits was redetermined under the rules for determining disability in adults. In a disability report prepared on plaintiff's behalf, plaintiff claims that adult disability is now caused by a learning disorder, but not the effects of leukemia. Plaintiff's claim was initially denied in an August 2009 cessation-of-benefits determination. Following a reconsideration cessation determination, in which the hearing officer concluded that plaintiff's eligibility for disability payments had ceased as of August 4, 2009, plaintiff requested an administrative hearing, which was held on February 3, 2011, before Administrative Law Judge ("ALJ") Mary M. French. In a January 23, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

    1.    Since August 4, 2009, the claimant has the following severe impairment(s): learning disorder.

    2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

    3.    The claimant has the following residual functional capacity since August 4, 2009: the claimant can perform the full range of work at all exertional levels with the following nonexertional limitations: the claimant has mental limitations which preclude working with more than simple and repetitive tasks and that preclude working with more than occasional contact with co-workers, supervisors, and the public.

    4.    Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform since August 4, 2009.

After the Appeals Council declined review on July 26, 2013, this appeal followed.

/ / /

/ / /

/ / /

/ / /

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues the ALJ erred in the following ways in concluding that Listing 12.05C does not apply: (1) the ALJ improperly considered the functional definition of intellectual disability; (2) the ALJ did not presume disability under the listing based on plaintiff's IQ; (3) the ALJ erred in determining that plaintiff does not have deficits in adaptive functioning; and (4) the ALJ erred in concluding that

3

intellectual disability and learning disability are not separate and distinct impairments.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

As to Listing 12.05C, the ALJ stated:

> . . .Given the claimant's valid verbal IQ test score of 69 and the severity of the claimant's learning disorder, the undersigned has carefully considered whether the severity of the claimant's mental condition meets or equals the requisite criteria found in section 12.05 of the Listing of Impairments. . . .
>
> * * *
>
> . . .[I]n reviewing the objective medical record, the undersigned finds that the claimant only has the severe impairment of a learning disorder, and that in this particular case, the claimant's low IQ is not a separate and distinct impairment from his learning disorder. Moreover, even if the undersigned were to find that the claimant's low IQ was a separate and distinct impairment, the undersigned finds that his low IQ and learning disorder are not accompanied by the necessary deficits in adaptive functioning. . . . Accordingly, the undersigned finds that the severity of the claimant's learning disorder does not meet the requirements of Section 12.05(C) of the Listing of Impairments.
>
> In making this determination that the claimant's mental condition fails to meet listing level severity, the undersigned relies on Dr. Nakagawa's consultative psychological evaluation and the reports of the claimant's daily activities. The undersigned recognizes that in her consultative psychological evaluation, Dr. Nakagawa administered several standard psychological tests. . . . Dr. Nakagawa determined that the claimant had an extremely low Verbal IQ of 69 that she considered valid. However, given that she also determined that the claimant's Performance IQ was 94, and that the psychological test results indicated that he functioned overall in the borderline range with extremely low to borderline verbal and average nonverbal skills, Dr. Nakagawa diagnosed the claimant with a probable learning disorder at Axis I and "no diagnosis" at Axis II. With respect to his daily activities, interests and hobbies, Dr. Nakagawa noted that the claimant reported that he got up around 7:00, that usually his girlfriend prepared him his meals, that he helped out by feeding their baby,

> that he sometimes made himself a sandwich for lunch, that his chores included taking out the trash and sometimes doing dishes, that he had no interests or hobbies, and that he mostly watched television and played video games.  As noted above, the claimant had previously reported to the Administration that he did have the hobby/interest of working on cars and took more of an active role in helping take care of his daughter.  It is noteworthy that even without this knowledge that the claimant was able to perform such multiple step tasks as rotating tires and changing spark plugs, Dr. Nakagawa did not find sufficient deficits in the claimant's adaptive functioning to warrant an Axis II diagnosis (see Exhibit 23).
>
> While the undersigned concedes that in the absence of substantial evidence regarding an individual's developmental period, a report that an individual had taken special education classes could be presumed as evidence of deficits in adaptive functioning, the undersigned emphasizes that there is ample evidence in this case concerning the claimant's functioning within the developmental period to rebut such a presumption.  Such evidence includes his reports that he is able to take care of his personal needs without difficulty, that he helps take care of his infant daughter, including feeding her, watching her, and changing her diapers, that he maintains some regular daily and monthly household chores such as taking out the trash, cleaning dishes, laundry, shopping, and cooking, and that he is able to fix cars (see Exhibits 4B, 3E-4E and 20E). . . .
>
> In addition, the undersigned further notes that the objective medical record is conspicuously absent any diagnosis for mental retardation.  A review of his IEP reports consistently show diagnoses for a specific learning disability, but also consistently lack any diagnosis for mental retardation.  The undersigned further notes that in his IEP report dated November 6, 2003, the report specifically documented in the Special Factors section that the claimant's significant discrepancy is not primarily the result of mental retardation, emotional disturbance or vision, hearing or motor handicaps (see Exhibits 13E-15E and 18E).

Under Listing 12.05, a claimant is considered disabled if he or she has significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.  The regulations provide that Listing 12.05 is conclusively met when any one of four groups of requirements is met, one being Listing 12.05C.  A finding of disability under Listing 12.05C requires: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

///

///

At the outset, the court agrees with plaintiff that the ALJ appears to have partially misstated the law by essentially imposing a third element under Listing 12.05C – the presence of sufficient deficits in adaptive functioning.  As the ALJ correctly stated, Listing 12.05C is satisfied when two requirements are met – a valid IQ score below 70 and another impairment imposing additional significant work-related restrictions.  When these two conditions are met, Listing 12.05's overall requirement of sufficient deficits in adaptive functioning is satisfied.  In other words, the four groups of requirements described in the listing provide a "safe harbor" of sorts under which disability is established.  Failure to fall under one of the described groups of requirements, however, does not necessarily mean that disability under Listing 12.05 is not established if the claimant nonetheless shows sufficient deficits in adaptive functioning.

In any event, the record demonstrates that the ALJ applied the correct legal framework despite having misstated the law.  Specifically, the ALJ considered whether plaintiff is disabled because: (1) plaintiff meets both requirements in Listing 12.05C; or (2) because plaintiff otherwise has sufficient deficits in adaptive functioning.  While plaintiff argues that he has deficits in adaptive functioning, he concedes that this test for disability under the regulations is not applicable in this case.  Specifically, plaintiff cites the Social Security Administration's Program Operations Manual System ("POMS") for the proposition that deficits in adaptive functioning are considered to determine whether a claimant's impairment medically equals the listing when the claimant's IQ is above 70.  Plaintiff states that where, as is the case here, the claimant's IQ is below 70, no further analysis is required beyond determining whether the two requirements of Listing 12.05C are met.

On this issue, the court agrees with defendant that whether plaintiff's learning disorder constitutes "another impairment imposing additional significant work-related restrictions" is dispositive.  Under Listing 12.05C, disability is only presumed when the claimant has a valid IQ score under 70 and another impairment.  Thus, absent an impairment other than low IQ, disability is not presumed under Listing 12.05C.

Plaintiff argues that the ALJ erred in concluding that, while his learning disability is a severe impairment, it is not "another impairment" under Listing 12.05C. The court does not agree. The plain language of Listing 12.05C requires an IQ score below 70 as well as an impairment imposing "additional and significant" work-related restrictions. Thus, the claimant must produce evidence of an impairment producing work-related restrictions other than low IQ. This is not to say that two separate impairments are always required, only that at least two limitations are required – valid IQ score below 70 and additional and significant work-related restrictions – even if caused by the same impairment.

Here, Dr Nakagawa determined that plaintiff's learning disability causes his low IQ. Not only has Dr. Nakagawa failed to identify a second impairment, the doctor failed to identify "additional and significant" restrictions arising from plaintiff's learning disability other than low IQ. While plaintiff points to a discrepancy between his various IQ scores, plaintiff has not identified any impairment imposing work-related restrictions other than low IQ.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 14) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 29, 2015

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE